**David L. GOLDMAN, Plaintiff,**

v.

**David BARNETT and Sally M. Avery, March A. Cavanaugh and Augusta M. Green, as they are Trustees of the Milton Avery Trust, Defendants.**

**Civ. A. No. 89–1137–K.**

United States District Court,
D. Massachusetts.

May 18, 1992.

John J. Weltman, Gerald Tishler, Brown, Rudnick, Freed & Gesmer, Boston, Mass., for David L. Goldman.

Ronald B. Shwartz, Eric L. Yaffe, Carol A. O'Day, Goulston & Storrs, Minna F. Felig, Segal & Feinberg, Boston, Mass., John E. Flanagan, John A. Busch, Best & Friedrich, Milwaukee, Wis., for David Barnett.

Terry Philip Segal, Segal & Feinberg, Boston, Mass., Christine Lepera, Gold, Farrell & Marks, New York City, for March Cavanaugh Augusta Green and Sally Avery.

## MEMORANDUM AND ORDER

KEETON, District Judge.

This is an action arising from the sale of works of art. Plaintiff asserts claims of fraud, negligent misrepresentation, negligence, breach of contract, breach of a covenant of good faith and fair dealing, breach of warranty, and violations of Mass.Gen.L. chs. 93A & 231. Pending before the court is the motion of Sally M. Avery, March A. Cavanaugh, and Augusta M. Green for summary judgment (Docket No. 48, filed February 18, 1992). In support of their motion, defendants have filed a Statement of Material Facts (Docket No. 50) and a Memorandum of Law (Docket No. 51) with attached exhibits. Plaintiff has filed Plaintiff's Opposition (Docket No. 55) with attached exhibits, two affidavits (Docket Nos. 56 and 57), and a Statement of Material Facts (Docket No. 54). In addition, defendants have filed a motion for leave to file a reply (Docket No. 58) with attached reply.

As a preliminary matter, the motion for leave to file a reply is granted. For the reasons that follow, the motion for summary judgment is granted in part and denied in part.

### I. Factual Background

The following facts are undisputed for purposes of this motion. Plaintiff David

Goldman sought to acquire a collection of art and was introduced to defendant David Barnett, an art dealer, by a mutual acquaintance. Barnett owned a number of paintings and held many others on consignment. Among the owners of works of art for whom Barnett held works on consignment was the owner of a large number of paintings by American painter Milton Avery, the Milton Avery Trust. Defendants Sally M. Avery, March A. Cavanaugh, and Augusta M. Green were Trustees of the Milton Avery Trust at all relevant times.

In May 1988, Goldman purchased two paintings by Milton Avery from Barnett. One of those paintings had been owned by Barnett and the other had been held by him on consignment from the Trust. At about the same time, Barnett provided Goldman with an appraisal of the two paintings that stated, "For Insurance Purposes." The appraisal was written on letterhead stationery of the "David Barnett Gallery, 1024 East State Street at Prospect Avenue, Milwaukee, Wisconsin 53202 (414) 271–5058." The stationery bore the printed disclosure, "Member Appraisers Association of America" at the bottom. Below the appraisal values, but above the printed disclosure, the appraisal stated, "Appraised by David J. Barnett, Member Appraisers Association of America." The appraisal bears Barnett's signature.

Following the initial purchase and sale, Goldman and Barnett communicated a number of times, Barnett visited Goldman at his home and office in New England, and Goldman visited Barnett's gallery in Wisconsin. During the spring and summer of 1988, Goldman purchased more than 60 works of art of several artists from Barnett. Included in those works were 10 works by Milton Avery in addition to the two Goldman had purchased in May. Although a number of the works sold to Goldman had been owned by Barnett, many, including all 10 Avery paintings, had been held by Barnett on consignment. Goldman was aware of the fact that Barnett sold paintings on consignment, and that Barnett received a commission on such sales.

Before the sale of any work of art (other than the first two, for which an appraisal was provided afterwards), Barnett gave Goldman an oral and then a written appraisal. Each of the written appraisals of the Avery paintings is similar in material respects to that described above, except that the appraisal of one such painting did not state, "For Insurance Purposes."

All negotiations for the purchase of the paintings took place through Barnett; Goldman did not at any time communicate directly with any of the Trustees of the Milton Avery Trust. However, because the Trust set the minimum purchase price at which its paintings could be sold, Barnett sought and obtained the consent of the Trustees to the price paid by Goldman for the Avery paintings. The purchase price negotiated for the entire collection of art totalled over $1 million, an amount that was nevertheless substantially below the value at which Barnett had appraised the collection. The major portion of the cost was attributed to Avery's paintings. Goldman made a substantial down payment and agreed to pay more than $100,000 monthly until his debt was extinguished. The payment plan was approved by the Milton Avery Trust. After making several monthly payments, Goldman came to believe that his paintings were worth substantially less than the value at which they had been appraised, and, indeed, far less than the price he had agreed to pay. Goldman stopped making payments and eventually filed this suit.

## II. Discussion

Goldman's complaint contains eight counts against the Trustees of the Milton Avery Trust. The eight counts, and defendants' challenges to them, may be divided for ease of discussion into four groups: misrepresentation (both intentional and negligent), negligence, breach of contract (including breach of express warranty and implied covenant), and violation of statute (both ch. 93A and ch. 231, § 85J. I address each group separately.

### A. Misrepresentation

██ Goldman alleges that Barnett, as agent for the Trust, represented to Gold-

man that the paintings were appraised at their fair market value. The Trustees may only be held liable on plaintiff's fraudulent misrepresentation theory if (a) Barnett committed actionable fraud, and (b) Barnett's fraud is imputable to the Trust.

To prove the elements of his fraud claim, Goldman must demonstrate that Barnett made a false representation of a material fact with knowledge of its falsity for the purpose of inducing Goldman to act thereon, and that Goldman relied upon the representation as true and acted upon it to his damage. *See, e.g., Bond Leather Co. v. Q.T. Shoe Mfg. Co.,* 764 F.2d 928, 935 (1st Cir.1985).

There is evidence in the record sufficient to support findings that (a) Barnett appraised the paintings, (b) Barnett told Goldman that the appraised value represented the fair market value, (c) the fair market value was in fact substantially below the appraised value, and (d) Goldman relied upon Barnett's statement of fair market value to his detriment. I conclude that there is also sufficient circumstantial evidence to allow a jury to find that Barnett knew that his representations were false and made in order to induce Goldman's purchase.

First, there is evidence that his appraisals were, on average, roughly four times higher than the fair market value as found by at least one other expert. Second, Barnett received a commission on his sales giving him inducement to inflate the purchase price. Third, a jury could find that Barnett held himself out as an expert appraiser; thus, a jury could reasonably infer that he did know the true market values.

Goldman also must demonstrate that Barnett's alleged fraud may be attributed to the Trustees; i.e., that it was committed within the scope of his authority as an agent for the Trust. There is sufficient evidence in the record for a jury so to find. On July 26, 1988, Barnett wrote to Goldman stating, "I spoke with Mrs. [Sally] Avery ... and did the best I could for you regarding price and payment schedule. I am pleased to be able to offer ... a 14% discount off of the appraised value of $1,028,035.00 or $886,185.00." Thus, a jury could find that defendant Sally Avery was aware of Barnett's alleged misrepresentation and ratified it. Moreover, a jury could find that the Trust's having vested Barnett with authority to negotiate the purchase price with Goldman and to consummate the sale on its behalf was a sufficient affirmative act by the Trust to cloak Barnett with apparent authority to make the allegedly fraudulent misrepresentation as to fair market value.

I briefly address defendants' other contentions with respect to this claim. First, defendants contend that plaintiff's tort claims are not actionable because no duty of care could have arisen from the contract between the parties for the sale of goods. However, defendants miss the point. Whether or not a duty arose to perform the appraisal with reasonable care, Barnett's alleged affirmative misrepresentation of fact may be actionable. Second, defendants argue that Barnett's statement of the value of the Avery paintings was his opinion and not a misrepresentation of material fact. However, a jury could find that Barnett held himself out as an expert art appraiser, particularly of the paintings of Milton Avery. His representation that the paintings had a given fixed market value may be found by a jury to have been a representation by one possessing knowledge rather than mere opinion. *See Briggs v. Carol Cars, Inc.,* 407 Mass. 391, 553 N.E.2d 930, 933 (1990) (citing *Restatement (Second) of Torts* § 539 (1977)).

For the reasons just stated, I conclude as well that Goldman's negligent misrepresentation claim presents questions for a jury.

### B. Negligence

Defendants' objections to plaintiff's negligence claim fare better. Goldman claims essentially that Barnett committed appraisal malpractice. However, there is no evidence that the Milton Avery Trust and its Trustees are qualified to make appraisals nor is there any evidence that they do so. Moreover, there is no evidence that the Trust derived any revenue from Barnett's appraisals (other than the profit from the sale of paintings that Barnett

appraised). The appraisals were signed by Barnett as a member of the Appraisers Association of America. There is no evidence that the Trustees were members of that association. Thus, although there is evidence that Barnett performed services as an appraiser and therefore that he may have owed Goldman a duty of reasonable care, there is no evidence that would allow his alleged negligence to be attributed to the defendant Trustees.

■ In fact, in his effort to show that the Trustees may be held liable for Barnett's negligence, Goldman risks demonstrating too much. In support of his theory that the Trustees are liable, Goldman attempts to show that Barnett was authorized by the Trust to make the appraisals. However, a seller has no duty to set a fair price. Unless Barnett made a fraudulent or negligent misrepresentation, or broke an express warranty, any determination of value he made on behalf of the seller, within the scope of his authority as seller's agent, is not actionable. Thus, if Goldman succeeds in proving that Barnett was acting on the Trust's behalf in issuing his "appraisal," that might foreclose the issue of negligence, Barnett's duty being owed in that circumstance to his principal, the seller, rather than to the buyer.

Judgment must be entered for the defendant Trustees on plaintiff's negligence claim.

## C. Breach of Contract

■ Defendants contend that Goldman's breach of contract, breach of implied covenant of good faith and fair dealing, and breach of warranty claims are all dependent upon Goldman's claim that Barnett expressly warranted the value of the paintings. Defendants further contend that there is no evidence that Barnett provided such a warranty.

As an initial matter, I conclude that the question of Barnett's authority to provide such a warranty is for the jury. Barnett had authority to sell the Trust's paintings. That authority almost certainly included the authority to provide warranties, such as a warranty that the paintings were genuine Averys. It is for the jury to decide

whether Barnett had the authority to issue the specific type of warranty that is at issue here.

Further, I conclude that whether Barnett provided a warranty of the paintings' fair market value is a question of fact. Under Massachusetts law, "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Mass.Gen.L. ch. 106, § 2–313(1)(a). For the reasons stated in Part II–A, above, I conclude that a reasonable jury could find that Barnett made a representation of fact as an expert. Although § 2–313(2) provides that "an affirmation *merely* of the value of the goods ... does not create a warranty," *id.* (emphasis added), a factfinder can find on the present record that Barnett went substantially beyond merely affirming value. There is evidence that he issued an expert appraisal of the paintings' fair market value.

Thus, plaintiff's breach of contract, breach of covenant of good faith and fair dealing, and breach of warranty claims must remain for the jury.

## D. Statutory Claims

Defendants' contentions that plaintiff's statutory claims fail depend on a conclusion that plaintiff cannot sustain his burden on the fraud and warranty claims. Because the latter claims remain, the statutory claims must remain as well.

## ORDER

For the foregoing reasons, it is hereby Ordered:

(1) Defendants' Motion for Leave to File Reply to Plaintiff's Opposition to the Avery Trust's Summary Judgment Motion (Docket No. 58) is allowed.

(2) Defendant's Motion for Summary Judgment (Docket No. 48) is allowed in part and denied in part.

(3) Interlocutory judgment is entered for defendants Sally M. Avery, March A. Cava-

naugh and Augusta M. Green on Count Six
of the Second Amended Complaint.